PROB 12C
(Rev.2011)

# United States District Court
for
## Middle District of Tennessee

## Superseding Petition for Warrant for Offender Under Supervision
## [Supersedes Petition Filed as Docket Entry No. 31]

Name of Offender: Christopher Scott Weaver    Case Number: 3:17-00037

Name of Current Judicial Officer: Honorable Aleta A. Trauger, U.S. District Judge

Name of Sentencing Judicial Officer: Honorable M. Casey Rodgers, Chief U.S. District Judge (NDFL)

Date of Original Sentence: March 17, 2006

Date of Amended Sentence: July 11, 2016

Original Offense: 18 U.S.C. §§ 922(g) and 924(a)(2), Possession of a Firearm by a Convicted Felon

Original Sentence: 180 months' custody followed by five years' supervised release

Amended Sentence: Time served followed by three years' supervised release

Type of Supervision: Supervised Release    Date Supervision Commenced: November 16, 2016

Assistant U.S. Attorney: Lynne Ingram    Defense Attorney: Mike Holley

## PETITIONING THE COURT

__X__    To Consider Additional Violations/Information.
_____    To issue a Summons.
_____    To issue a Warrant.

## THE COURT ORDERS:
☒ The Consideration of Additional Violations/Information
☐ The Issuance of a Warrant:
    ☐ Sealed Pending Warrant Execution
        (cc: U.S. Probation and U.S. Marshal only)
☐ The Issuance of a Summons.
☐ Other

Considered this 21st day of Aug, 2017,
and made a part of the records in the above case.

Aleta A. Trauger
U.S. District Judge

I declare under penalty of perjury that the foregoing is true and correct. Respectfully submitted,

James Foster
U.S. Probation Officer

Place    Nashville, TN

Date    August 21, 2017

## ALLEGED VIOLATIONS

The information provided in the previous petition, filed as docket entry No. 31, has been amended as follows:

    Violation No. 1 - was amended to report additional violation behavior.

    Violation No. 4 - was added to report new violation behavior.

    Compliance with Supervision Conditions - was amended to provide updated information.

    Update of Offender Characteristics - was amended to provide updated information.

The probation officer believes that the offender has violated the following condition(s) of supervision:

| Violation No. | Nature of Noncompliance |
|---|---|
| 1. | **The defendant shall not unlawfully use a controlled substance.** |

Mr. Weaver submitted urine specimens which tested positive for illicit substances on the following dates:

| Date | Drug(s) |
|---|---|
| 03/01/17 | Methamphetamine |
| 03/09/17 | Heroin |
| 03/16/17 | Heroin |
|  | Marijuana |
|  | Methamphetamine |
| 03/22/17 | Heroin |
|  | Valium |
| **08/07/17** | **Methamphetamine** |
| **08/08/17** | **Methamphetamine** |
| **08/09/17** | **Amphetamine** |
|  | **(Methamphetamine metabolite)** |
| **08/10/17** | **Methamphetamine** |
| **08/11/17** | **Methamphetamine** |

The defendant submitted a urine specimen which tested positive for methamphetamine on March 1, 2017, and submitted a urine specimen which tested positive for heroin on March 9, 2017. Mr. Weaver denied having used methamphetamine but admitted to having used heroin a few days before he submitted each of the aforementioned urine specimens.

On March 16, 2017, Mr. Weaver admitted to having used heroin, which he ingested orally, and marijuana. He denied having used methamphetamine, however, and could not account for the presence of that drug in his urine.

On March 22, 2017, Mr. Weaver admitted to having ingested Valium and methadone without a prescription for either drug, in order to alleviate the symptoms of withdrawal from heroin. He denied any new use of heroin, however. That claim was contradicted by a laboratory analysis of the aforementioned urine specimen which indicated the presence of codeine and

morphine, two chemical metabolites of heroin, and the absence of methadone.

**Each day from August 7 to 11, 2017, Mr. Weaver submitted urine specimens which tested positive for methamphetamine. Two of those urine specimens, collected on August 7 and 10, 2017, tested positive for Methamphetamine despite that they were diluted, as Mr. Weaver had consumed significant amounts of water prior to the collection of those specimens. The urine specimen collected on August 9, 2017, indicated the use of methamphetamine based upon the presence of amphetamine, a chemical metabolite of methamphetamine.**

**When questioned by the probation officer, Mr. Weaver maintained that he last used methamphetamine on the early morning of August 6, 2017, despite that he continued to test positive for methamphetamine on five consecutive days (August 7 to August 11, 2017). In order to determine whether or not Mr. Weaver used methamphetamine during that period, the probation officer has requested further laboratory analysis and comparison of the urine specimens collected on the aforementioned dates.**

2. <u>**The defendant shall participate in a program of mental health treatment which may include inpatient treatment.**</u>

Mr. Weaver failed to attend a scheduled counseling session at his mental health treatment provider, the Evelyn Frye Center, on April 12, 2017.

3. <u>**The defendant shall not commit another federal, state, or local crime and shall not possess a firearm, destructive device, or any other dangerous weapon.**</u>

On the early morning of April 13, 2017, in White Bluff, Tennessee, Mr. Weaver was arrested by a deputy of the Dickson County Sheriff's Office and charged with Possession of a Schedule II Narcotic (Methamphetamine) with Intent to Resale [TCA 39-17-417, a Class D felony], Possession of Drug Paraphernalia [TCA 39-17-425, a Class A misdemeanor], Driving Under the Influence - 1st Degree [TCA 55-10-401, a Class A misdemeanor], and Driving While in Possession of Methamphetamine [TCA 55-50-506, a Class B misdemeanor]. According to a representative of the Dickson County General Sessions Court, all of the aforementioned charges remain pending and Mr. Weaver is next scheduled to appear for trial on November 17, 2017.

The following information was obtained from an arrest report (Complaint No. 20170413-007) prepared by Dickson County Sheriff's Deputy Lashlee. On April 13, 2017, at approximately 1:40 a.m., Mr. Weaver was the subject of a traffic stop conducted after a sheriff's deputy observed him fail to maintain lanes while driving on Highway 70 in White Bluff. Mr. Weaver's passenger, identified as Charles Herman, was the subject of an active state probation violation warrant in Dickson County, and was taken into custody. Mr. Weaver was placed under arrest after performing poorly on field sobriety tests, and he consented to a search of his vehicle which revealed 2.47 grams of methamphetamine, a crack cocaine pipe, and several syringes.

4. <u>**The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.**</u>

> On the evening of August 5, 2017, Mr. Weaver occupied a hotel room in Lebanon, Tennessee, where he and Anna Warren, who was enrolled in the same halfway house program as Mr. Weaver, used methamphetamine together. According to Mr. Weaver, he accepted and used approximately one gram of methamphetamine offered to him by Ms. Warren, he observed Ms. Warren nasally ingest several lines of methamphetamine, and he left the hotel room at approximately 3:00 a.m. on the morning of August 6, 2017. As a result of those events, Mr. Weaver was dismissed from The Next Step halfway house.

**Compliance with Supervision Conditions and Prior Interventions:**
Mr. Christopher Weaver began supervision in the Middle District of Tennessee on November 16, 2016, and is scheduled to terminate supervision on November 15, 2019. Mr. Weaver, who was sentenced in the Northern District of Florida on March 17, 2006, was originally ordered to serve 180 months' custody and five years' supervised release. However, on July 11, 2016, Mr. Weaver's judgment was amended pursuant to a motion under 28 U.S.C. § 2255 (Ineffective Assistance of Counsel or Prosecutorial Misconduct). Consequently, he was resentenced to time served and three years' supervised release.

As Mr. Weaver has no ties to the Northern District of Florida and his amended sentence did not leave adequate time for him to serve the remainder of his custodial term in a residential reentry center, Mr. Weaver was released directly from custody to begin his term of supervised release in the Middle District of Tennessee, where he initially resided with his mother and stepfather at their residence in Kingston Springs, Tennessee. Although Mr. Weaver's mother and stepfather were historically his only source of support in this district, Mr. Weaver's relationship with them was strained by his use of illicit substances. **From June 14 to August 6, 2017, Mr. Weaver resided at The Next Step, a recovery-based halfway house in Lebanon, Tennessee. However, Mr. Weaver was unsuccessfully discharged from that halfway house and has, since August 8, 2017, resided at the home of a friend in Dickson, Tennessee. As of the date of this report, Mr. Weaver is attempting to secure admission to another halfway house, Restoration House, in Nashville, Tennessee. Since June 19, 2017, Mr. Weaver has been employed as a machine operator for Nashville Wire, in Lebanon, Tennessee.**

Since January 2017, Mr. Weaver has been enrolled in outpatient mental health and substance abuse treatment services at the Evelyn Frye Center, in Nashville, Tennessee. Having been diagnosed with Bipolar Disorder, Opiate Use Disorder, and Cocaine Use Disorder, Mr. Weaver was prescribed the psychiatric medication Lithium, and was recommended to attend counseling and medication monitoring appointments several times per month. Although Mr. Weaver's treatment attendance was somewhat inconsistent prior to his arrest in April 2017, his attendance improved following his discharge from Buffalo Valley on June 14, 2017. Mr. Weaver remains enrolled in a program of random drug testing at the Probation Office.

In the months following his release from custody, Mr. Weaver experienced a precipitous decline in terms of his emotional stability and sobriety. While incarcerated, Mr. Weaver obtained a General Equivalency Diploma, became educated and certified in waste management, and acted as a substance abuse counselor to other inmates. In March 2017, Mr Weaver relapsed to the use of heroin, a drug which he used weekly and sometimes daily between 1993 and 2003. Mr. Weaver reported emotional distress regarding his transition out of custody, stating that he "wasn't ready yet." He also felt aggrieved that he was not afforded a more gradual transition back into the community through a residential reentry center (RRC), which was unfortunately not practical following the amendment of his sentence. Additionally, Mr. Weaver reported feeling very frustrated with the fact that he was sentenced to any term of supervised release, voicing his opinion that he "doesn't need someone to tell [him] what to do."

In light of Mr. Weaver's precarious residential situation and relapse to illegal drug use, the probation officer felt he would benefit from the structured residential environment, high degree of oversight, and accountability afforded by the Diersen Charities Residential Reentry Center (RRC), in Nashville. The probation officer

recommended that the Court modify Mr. Weaver's special conditions to require that he reside at the RRC for no less than six months. For his part, Mr. Weaver concurred with the probation officer's recommendation, agreed with the proposed condition, and voluntarily waived his statutory waiver to a hearing on the matters. The Court imposed the aforementioned special condition and, on March 20, 2017, the Bureau of Prisons designated Mr. Weaver to enter the RRC on April 13, 2017. However, Mr. Weaver did not enter the RRC because he was arrested on that date, and cannot be admitted to the RRC while he remains subject to pending criminal charges (see Violation No. 3).

In March 2017, in order to supplement the outpatient treatment Mr. Weaver was already receiving elsewhere, the probation officer referred him to Samaritan Recovery Community (Samaritan), a substance abuse treatment center in Nashville, Tennessee. Efforts were made to facilitate Mr. Weaver's enrollment into Samaritan's Intensive Outpatient Treatment Program, or its inpatient substance abuse treatment program. However, Samaritan declined to accept Mr. Weaver into its inpatient treatment program on the basis that it could not accommodate his particular mental health treatment needs. Ultimately, Mr. Weaver was admitted to a 28-day inpatient substance abuse treatment program at Buffalo Valley, in Hohenwald, Tennessee, and was successfully discharged from that program on June 14, 2017.

**As noted in Violation No. 4 of this petition, Mr. Weaver spent the evening of August 5, 2017, at a Lebanon-area hotel room occupied by Anna Warrren, who (like Mr. Weaver) was also a resident at a halfway house operated by The Next Step, Inc. At the hotel room, Mr. Weaver engaged in a romantic liaison with Ms. Warren, with whom he used methamphetamine that she provided, and he left on the early morning of August 6, 2017. Normally, according to the rules of The Next Step halfway house, Mr. Weaver would not have been allowed to stay outside of the halfway house in order to engage in romantic liaison with another halfway house resident. However, Julie Haddock, the owner and operator of Mr. Weaver's halfway house, was under the mistaken belief that Mr. Weaver was in Memphis, Tennessee, from August 4 to August 6, 2017. Despite never having been granted permission by the probation officer to travel outside of the Middle District of Tennessee, Mr. Weaver falsely represented to Ms. Haddock that he had been granted such permission, and requested that Ms. Haddock permit him leave from the halfway house during the aforementioned period. Ms. Haddock granted Mr. Weaver's request on August 2, 2017. On the evening of August 6, 2017, Ms. Haddock received information concerning Mr. Weaver's association and drug use with Ms. Warren the previous evening, and discharged Mr. Weaver from the halfway house.**

The probation officer believes it necessary to advise the Court of Mr. Weaver's tumultuous relationship with his ex-wife, Amy Jenkins (aka, Amy Schriver), as Mr. Weaver has remained particularly fixated upon that relationship, apparently to his detriment. Mr. Weaver has maintained regular contact with Ms. Jenkins throughout his supervision term, despite the probation officer's instructions that he should discontinue that contact on the basis that Ms. Jenkins has been convicted of multiple felonies, is wanted for a probation violation in Arkansas, and has historically been a very negative influence in his life. Prior to Mr. Weaver's arrest and subsequent federal incarceration in 2005, his romantic relationship with Ms. Jenkins was colored by physical altercations, mutual drug abuse, and criminal conduct. Mr. Weaver pled no contest to the charge of Battery in 2002, having allegedly punched Ms. Jenkins in the face several times. Mr. Weaver's relationship with Ms. Jenkins produced two children (Gabriel Weaver, age 13; and Breck Weaver, age 12). According to Mr. Weaver, the latter child, a daughter, was born suffering from neonatal abstinence syndrom because Ms. Jenkins regularly abused illicit drugs during her pregnancy. Since approximately 2005, both children have resided in the custody of Ms. Jenkins' parents, Carol and Jon Jenkins, in Memphis, Tennessee. In Florida, Kentucky, and Tennessee, Ms. Jenkins was previously convicted of multiple misdemeanor and felony offenses which include Larceny, Possession of Cocaine, Possession of Marijuana, Possession and Use of a Controlled Substance Without a Prescription, Dealing in Stolen Property, Fraudulently Providing False Information to a Pawn Shop, and Battery. Since August 17, 2016, Ms. Jenkins has remained subject to a state probation violation warrant issued by the Little Rock Sheriff's Office, in Pulaski County, Arkansas.

At the outset of his supervision term, Mr. Weaver initially denied having had any contact with Ms. Jenkins since their correspondence while he was incarcerated, and he denied knowing her current whereabouts. On the basis of Ms. Jenkins' own criminal status, as well as Mr. Weaver's prior conviction for having physically abused her, the probation officer discouraged Mr. Weaver from having any contact with Ms. Jenkins and encouraged him to focus on complying with the terms of his supervised release. In January 2017, the probation officer learned that Mr. Weaver had maintained contact with Ms. Jenkins and apparently made plans to travel with her to Memphis, to visit their children. The probation officer advised Mr. Weaver that such travel would not be permitted and, on the basis that Ms. Jenkins was wanted out of Arkansas, he was not to have any further contact with her.

Unbeknownst to the probation officer at the time, on March 2, 2017, Mr. Weaver had contact with Ms. Jenkins when she came to Nashville and he reportedly attempted to help her enroll in a substance abuse treatment program. On the evening of March 15, 2017, Ms. Jenkins was arrested in Nashville after attempting to shoplift $315 in merchandise from a department store, and attempting to falsely identify herself to police utilizing another woman's Social Security card. Notably, the day following Ms. Jenkins' arrest, Mr. Weaver reported to the Probation Office in a state of clear emotional distress and admitted to having used heroin late the previous evening. At the time of her arrest, Ms. Jenkins reported to police that she lived at the address of Mr. Weaver's mother, where he also resided at that time. Ms. Jenkins is currently incarcerated at the Metropolitan Detention Center, is next scheduled to appear in Davidson County Criminal Court on August 17, 2017, and remains subject to a probation violation warrant which may ultimately result in her extradition to Arkansas.

**Update of Offender Characteristics:**
On March 16, 2017, the probation officer submitted a report (see Docket Entry No. 4) informing the Court that Mr. Weaver had used illegal drugs and failed to attend outpatient treatment, and the same report requested that the Court modify Mr. Weaver's special conditions to include a requirement that he reside at a Residential Reentry Center for no less than six months. The Court imposed the requested condition on the same date, and Mr. Weaver was designated by the Bureau of Prisons to enter the RRC on April 13, 2017.

On the basis of violation behavior detailed in Violations No. 1 to 3, the probation officer filed a petition for a warrant (filed as Docket Entry No. 7) on April 13, 2017, and Your Honor ordered the issuance of a warrant on April 14, 2017. On the same date, prior to the issuance of the warrant, Mr. Weaver bonded out of custody in Dickson County, Tennessee, and was arrested by the U.S. Marshals Service at his mother's residence on April 20, 2017. Later the same day, Mr. Weaver made an initial appearance before Magistrate Judge Jeffrey S. Frensley, who ultimately ordered that Mr. Weaver remain in custody pending a revocation hearing before Your Honor.

On May 10, 2017, the parties submitted an agreed order petitioning that the Court order Mr. Weaver to attend a 28-day inpatient substance abuse treatment program at Buffalo Valley, permit disclosure of related treatment records to the probation officer, and avail himself of any assistance Buffalo Valley might provide him in locating a group home in which to reside following his discharge from treatment. On May 11, 2017, the Court ordered the aforementioned conditions and set a revocation hearing to take place following Mr. Weaver's expected discharge from treatment.

Mr. Weaver was released from the custody of the U.S. Marshals Service on May 16, 2017, and was admitted the same day to inpatient treatment at Buffalo Valley, in Hohenwald, Tennessee. Mr. Weaver remained at Buffalo Valley until June 14, 2017, when he was discharged upon successful completion of that program. **On July 26, 2017, the probation officer filed a report (field as Docket Entry No. 31) providing updated information concerning Mr. Weaver's residential status, associations, and pending local charges. On the same date, the Court ordered that the additional information would be considered at Mr. Weaver's revocation hearing, which is currently scheduled before Your Honor on November 30, 2017.**

**U.S. Probation Officer Recommendation:**
It is respectfully recommended that this additional information and new violation behavior be considered when Mr. Weaver appears before the Court. This information has been reported to Assistant U.S. Attorney Lynne Ingram, who concurs with the probation officer's recommendation.

Approved: _____
Britton Shelton
Supervisory U.S. Probation Officer

## SENTENCING RECOMMENDATION
### UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
### UNITED STATES V. CHRISTOPHER SCOTT WEAVER, CASE NO. 3:17-00037

**GRADE OF VIOLATION:** A
**CRIMINAL HISTORY:** VI

**ORIGINAL OFFENSE DATE:** POST APRIL 30, 2003  PROTECT ACT PROVISIONS

| | Statutory Provisions | Guideline Provisions | Recommended Sentence |
|---|---|---|---|
| CUSTODY: | 5 years (Class A Felony) 18 U.S.C. § 3583(e)(3) | 51 to 63 months U.S.S.G. § 7B1.4(a) | 51 months |
| SUPERVISED RELEASE: | 5 years less any term of imprisonment imposed 18 U.S.C. § 3583(h) | 2 to 5 years U.S.S.G. § 5D1.2(a)(2) | No supervision to follow |

18 U.S.C. § 3583(g)(1) and (g)(4) If the defendant possess a controlled substance or, as part of drug testing, tests positive for illegal controlled substances more than 3 times over the course of 1 year, the Court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under subsection (e)(3).

18 U.S.C. § 3583(e)(3) The Court may revoke a term of supervised release and require the offender to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post release supervision, if the Court finds by a preponderance of the evidence that the offender violated a condition of supervised release. When a term of supervised release is revoked and the offender is required to serve a term of imprisonment, the Court may include a requirement that the offender be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release, in accordance with 18 U.S.C. § 3583(h).

**Guideline Policy Statements:** Pursuant to U.S.S.G § 7B1.3(a)(1), upon a finding a Grade A or B violation, the Court shall revoke supervised release.

Respectfully Submitted

_____
James Foster
U.S. Probation Officer

Approved: _____
Britton Shelton
Supervisory U.S. Probation Officer

# VIOLATION WORKSHEET

1. **Defendant** Christopher Scott Weaver

2. **Docket Number** *(Year-Sequence-Defendant No.)* 0650 3:17CR00037 - 1

3. **District/Office** Middle District of Tennessee

4. **Original Sentence Date** 03 / 17 / 2006
                           month  day  year

5. **Original District/Office** Northern District of Florida
   *(if different than above)*

6. **Original Docket Number** *(Year-Sequence-Defendant No.)* 3:05CR71-001

7. **List each violation and determine the applicable grade (see §7B1.1):**

| Violation(s) | Grade |
|---|---|
| Unlawful use of a controlled substance. | C |
| Failure to attend mental health treatment. | C |
| New felony (x1) and misdemeanor (x3) offenses. | A |
| Frequenting a location where illegal drugs are used. | C |

8. **Most Serious Grade of Violation** *(see §7B1.1(b))*     A

9. **Criminal History Category** *(see §7B1.4(a))*     VI

10. **Range of Imprisonment** *(see §7B1.4(a))*     51 - 63 months

11. **Sentencing Options for Grade B and C Violations Only** *(Check the appropriate box):*

☐ (a) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, §7B1.3(c)(1) provides sentencing options to imprisonment.

☐ (b) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than six months but not more than ten months, §7B1.3(c)(2) provides sentencing options to imprisonment.

☒ (c) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than ten months, no sentencing options to imprisonment are available.

Mail documents to: United States Sentencing Commission
Ste 2-500, South Lobby, One Columbus Cir, NE
Washington, DC 20002-8002

**Defendant** Christopher Scott Weaver

12. **Unsatisfied Conditions of Original Sentence**

    List any restitution, fine, community confinement, home detention. or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation (see §7B1.3(d)):

    Restitution($) 0            Community Confinement 6 months
    Fine($)        0            Home Detention         0
    Other          0            Intermittent Confinement 0

13. **Supervised Release**
    If probation is to be revoked, determine the length, if any, of the term of supervised release according to the provisions of §§5D1.1-1.3 (see §§7B1.3(g)(1)).

    Term: _____ to _____ years

    If supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the defendant may, to the extent permitted by law, be ordered to recommence supervised release upon release from imprisonment (see 18 U.S.C. §3583(e) and §7B1.3(g)(2)).

    Period of supervised release to be served following release from _____
    imprisonment:

14. **Departure**

    List aggravating and mitigating factors that may warrant a sentence outside the applicable range of Imprisonment:

15. **Official Detention Adjustment** (see §7B1.3(e)): _____ months _____ days